**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CHAIBOU ADAMOU MADI, | ) Case No.: 1:26-cv-01095-JLT-SKO (HC) |
| Petitioner, | ) FINDINGS AND RECOMMENDATIONS TO GRANT THE PETITION FOR WRIT OF HABEAS CORPUS AND DIRECT RESPONDENT TO PROVIDE PETITIONER WITH A BOND HEARING |
| v. | ) |
| ANDREWS, et al., | ) [TEN DAY DEADLINE] |
| Respondents. | ) |

Petitioner is an immigration detainee proceeding with counsel with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.

Petitioner filed the instant petition on February 9, 2026. (Doc. 1.)  On March 11, 2026, Respondent filed an answer to the petition. (Doc. 8.) On March 20, 2026, Petitioner filed an opposition. (Doc. 9.)

Petitioner challenges his continued detention by the Bureau of Immigration and Customs Enforcement ("ICE").  He claims his prolonged detention without a bond hearing violates his procedural due process rights under the Fifth Amendment.  He claims he should be immediately

1

released, or alternatively, provided a bond hearing before an immigration judge ("IJ") at which the Government must justify his continued detention by clear and convincing evidence.

For the reasons discussed below, the Court will recommend the petition be granted and Respondent be directed to provide Petitioner with a bond hearing before an IJ.

## I.    BACKGROUND

Petitioner is an asylum-seeker who fled Niger after Boko Haram attacked his family. (Doc. 1 at ¶ 2.) He crossed the border into the United States on January 6, 2025, and was apprehended by U.S. Border Patrol. (Doc. 1 at ¶ 2.) Upon processing, Petitioner expressed a fear of persecution. (Doc. 1 at ¶ 21.) He passed a credible fear interview. (Doc. 1 at ¶ 21.) On February 18, 2025, ICE initiated removal proceedings against him charging him as removable. (Doc. 1 at ¶ 21.)

Petitioner requested a bond hearing before an Immigration Judge ("IJ"). (Doc. 1 at ¶ 22.) On March 10, 2025, the IJ advised Petitioner she did not have the power to grant release on bond. (Doc. 1 at ¶ 22.)

On June 5, 2025, Petitioner filed an I-589 application for asylum, withholding of removal, and protection under the Convention Against Torture. (Doc. 1 at ¶ 23.)

On June 12, 2025, Petitioner again requested release on bond, and the IJ again advised she did not have the power to grant bond release. (Doc. 1 at ¶ 24.)

On October 10, 2025, the Immigration Court held a merits hearing on Petitioner's application for asylum, withholding of removal and for protection under the Convention Against Torture. (Doc. 1 at ¶ 25.) The IJ denied the application and ordered Petitioner removed. (Doc. 1 at ¶ 25.)

On December 19, 2025, Petitioner filed a notice of appeal to the Board of Immigration Appeals ("BIA"). (Doc. 1 at ¶ 26.) As of this date, the BIA has not yet set a briefing schedule on Petitioner's appeal. (Doc. 1 at ¶ 26.)

Petitioner has been in continuous custody since January 6, 2025, a period of over 14 months.

## II.    DISCUSSION

A. Jurisdiction

A district court may grant a writ of habeas corpus when the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).

2

"[D]istrict courts retain jurisdiction under 28 U.S.C. § 2241 to consider habeas challenges to immigration detention that are sufficiently independent of the merits of [a] removal order." Lopez-Marroquin v. Barr, 955 F.3d 759, 759 (9th Cir. 2020) (citing Singh v. Holder, 638 F.3d 1196, 1211–12 (9th Cir. 2011)). Pertinent here, the Supreme Court specifically directed that federal courts have jurisdiction to review a constitutional challenge to a non-citizen's detention. See Demore v. Kim, 538 U.S. 510, 517 (2003).

B.  Mandatory Detention under 8 U.S.C. § 1225(b)(1)

Petitioner states he has been in continuous detention since apprehension on January 6, 2025. He complains the approximately 14-month period has become prolonged and indefinite, and he should be given a bond hearing, or in the alternative, released from custody.

1.  Statutory Background

A non-citizen who is present in the United States but has not been admitted is considered an applicant for admission. 8 U.S.C.A. § 1225(a)(1).  Such applicant is subject to expedited removal if the applicant (1) is inadmissible because he or she lacks a valid entry document; (2) has not "been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility"; and (3) is among those whom the Secretary of Homeland Security has designated for expedited removal. 8 U.S.C. §§ 1225(b)(1)(A)(i), (iii)(I)–(II). Once "an immigration officer determines" that a designated applicant "is inadmissible," "the officer [must] order the alien removed from the United States without further hearing or review." 8 U.S.C.A. § 1225(b)(1)(A)(i). Here, Petitioner was determined inadmissible and placed in removal proceedings.

If an applicant "indicates either an intention to apply for asylum" or "a fear of persecution," the immigration officer "shall refer the alien for an interview by an asylum officer." 8 U.S.C.A. §§ 1225(b)(1)(A)(i)–(ii). The point of this screening interview is to determine whether the applicant has a "credible fear of persecution." § 1225(b)(1)(B)(v). If the asylum officer finds an applicant's asserted fear to be credible, the applicant will receive "full consideration" of his asylum claim in a standard removal hearing. 8 C.F.R. § 208.30(f); see 8 U.S.C. § 1225(b)(1)(B)(ii). If the asylum officer finds that the applicant does not have a credible fear, a supervisor will review the asylum officer's determination. 8 C.F.R. § 208.30(e)(8). If the supervisor agrees with it, the applicant may appeal to an

immigration judge, who can take further evidence and "shall make a de novo determination." 8 U.S.C.A. §§ 1003.42(c), (d)(1); see 8 U.S.C. § 1225(b)(1)(B)(iii)(III). In this case, Petitioner made a claim for asylum during the screening interview, and the asylum officer determined he had a credible fear of persecution.  However, the Immigration Court denied his application for asylum, and the matter is currently on appeal to the BIA.

Regardless of whether the applicant receives full or expedited review, he or she is not entitled to immediate release. Dep't of Homeland Sec. v. Thuraissigiam, 591 U.S. 103, 111 (2020). They "shall be detained pending a final determination of credible fear of persecution and, if found not to have such a fear, until removed." Id. (citing 8 U.S.C.A. § 1225(b)(1)(B)(iii)(IV)). Likewise, applicants who are found to have a credible fear may also be detained pending further consideration of their asylum applications. Id. (citing 8 U.S.C.A. § 1225(b)(1)(B)(ii)). In either case, the applicant must be detained until the conclusion of those proceedings. Jennings v. Rodriguez, 583 U.S. 281, 297 (2018).  However, an applicant "may be temporarily released on parole 'for urgent humanitarian reasons or significant public benefit.'" Id. at 288 (quoting 8 U.S.C. § 1182(d)(5)(A) and citing 8 C.F.R §§ 212.5(b), 235.3 (2017)).  Said parole request is considered by designated ICE Enforcement Removal Operations ("ERO") officers. 8 C.F.R. § 212.5(a). "Such parole, however, 'shall not be regarded as an admission of the alien.'" Jennings, 583 U.S. at 288 (quoting 8 U.S.C. § 1182(d)(5)(A)).

### 2.   Due Process in Prolonged Immigration Detention

The parties acknowledge that Petitioner has been deemed inadmissible and is in removal proceedings subject to mandatory detention pursuant to § 1225(b).  Petitioner contends he has been unreasonably detained for approximately 14 months without a bond hearing in violation of his due process rights.  He argues that due process requires he should be granted a bond hearing before an immigration judge to determine whether he is a risk of flight or danger to the community.

The Fifth Amendment's Due Process Clause provides that "[n]o person shall be ... deprived of life, liberty, or property, without due process of law." "It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings," Reno v. Flores, 507 U.S. 292, 306 (1993), and "[a] statute permitting indefinite detention of an alien would raise a serious constitutional problem," Zadvydas v. Davis, 533 U.S. 678, 690 (2001). The Supreme Court nevertheless has

recognized that "[d]etention during deportation proceedings is a constitutionally permissible part of [the deportation] process." Demore v. Kim, 538 U.S. 510, 531 (2003); see also Carlson v. Landon, 342 U.S. 524, 538 (1952) ("[d]etention is necessarily a part of this deportation procedure").

In analyzing whether prolonged detention violates due process, many courts have looked to Justice Kennedy's concurrence in Demore, which stated that, "since the Due Process Clause prohibits arbitrary deprivations of liberty, a lawful permanent resident alien such as respondent could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified." Id. at 532 (Kennedy, J., concurring).

Several circuit courts including the Ninth Circuit, as well as numerous district courts including this Court, have found that unreasonably long detention periods may violate the due process clause. See, e.g., Rodriguez v. Marin ("Rodriguez IV"), 909 F.3d 252, 256 (9th Cir. 2018) (the Ninth Circuit asserted "grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional...."); Black v. Decker, 103 F.4th 133, 138 (2d Cir. 2024) (unreasonably prolonged detention of alien without bond hearing violates due process); Diop v. ICE/Homeland Sec., 656 F.3d 221, 235 (3d Cir. 2011) (detention of an alien for a period of nearly three years without further inquiry into whether it was necessary to ensure his appearance at the removal proceedings or to prevent a risk of danger to the community, was unreasonable, and, therefore, a violation of the Due Process Clause"); German Santos v. Warden Pike, 965 F.3d 203 (3d Cir. 2020) (reversing and remanding to district court to order bond hearing while detained under § 1226(c)); Maksim v. Warden, 1:25-cv-00955-SKO, 2025 WL 2879328  (E.D. Cal. Oct. 9, 2025) (ordering bond hearing for noncitizen detained under § 1225(b)(1) for 11 months); Diep v. Wofford, 1:24-cv-01238-SKO, 2025 WL 604744 (E.D. Cal Feb. 25, 2025) (ordering bond hearing for noncitizen detained under 8 U.S.C. § 1226(c) for 13 months); A.E. v. Andrews, 1:25-cv-00107-KES-SKO, 2025 WL 1424382 (E.D. Cal. May 16, 2025) (ordering bond hearing for noncitizen detained under 8 U.S.C. § 1225(b) for 20 months).

The Ninth Circuit has also noted that many courts have applied the Mathews[1] test in considering due process challenges in the immigration context. Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022). However, the Supreme Court, when confronted with constitutional challenges to immigration detention, has not resolved them through express application of Mathews. See, e.g., Demore, 538 U.S. at 523, 526–29; see also Dusenbery v. United States, 534 U.S. 161, 168, 122 S.Ct. 694, 151 L.Ed.2d 597 (2002) ("[W]e have never viewed Mathews as announcing an all-embracing test for deciding due process claims."). Nevertheless, several district courts in the Ninth Circuit including this Court have employed the Mathews test in the context of evaluating whether due process entitles a petitioner to a bond hearing. See, e.g., Jensen v. Garland, 2023 WL 3246522, at *4 (C.D. Cal. 2023); Galdillo v. U.S. Dep't of Homeland Sec., 2021 WL 4839502, at *3 (C.D. Cal. 2021); Jimenez v. Wolf, 2020 WL 510347, at *3 (N.D. Cal. 2020); Riego v. Scott, 2025 WL 660535 (E.D. Cal. 2025).

Also, the Ninth Circuit has noted the common use of the Mathews test and assumed (without deciding) that it applies to due process claims in the immigration detention context. Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206-07 (9th Cir. 2022). Thus, the Court finds application of the Mathews test in this case appropriate.

Under the Mathews test, the "identification of the specific dictates of due process generally requires consideration of three distinct factors." Mathews, 424 U.S. at 334–35. "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Id. at 335.

In the first factor, the Court evaluates Petitioner's private interest in being free from detention against the government's stated interests in protecting the public from a risk of danger and any risk of flight to avoid removal. Petitioner has been detained approximately 14 months. Compared to the six-

---

[1] Mathews v. Eldridge, 424 U.S. 319 (1976).

month presumptive period set forth in Zadvydas beyond which continued detention becomes prolonged, Petitioner's 14-month detention qualifies as prolonged. Zadvydas, 533 U.S. at 701. In addition, the Ninth Circuit has held that an individual's private interest in "freedom from prolonged detention" is "unquestionably substantial." Singh v. Holder, 638 F.3d 1196, 1208 (9th Cir. 2011).

In Rodriguez Diaz v. Garland, the Ninth Circuit stated that "in evaluating the first prong of the Mathews analysis, it is not sufficient to simply count the months of detention and leave it at that. The process received during this time, the further process that was available, and the fact that his detention was prolonged due to his decision to challenge his removal order must also be considered. 53 F.4th at 1208. The Ninth Circuit stated it was "important not to overstate the strength of Petitioner's showing under the first Mathews factor." 53 F.4th at 1213. Here, unlike the petitioner in Rodriguez Diaz, Petitioner has not received the benefit of a bond hearing. The Ninth Circuit noted that detentions longer than six months were considered "prolonged" in cases such as this where "no individualized bond hearings had taken place at all." Id. at 1207. The appellate court found this distinction significant. Id. Thus, Petitioner's private interest in being free from prolonged detention of 14 months weighs in his favor.

The Court also considers whether the reason for the lengthy period of detention is due to Petitioner's own actions. Rodriguez Diaz, 53 F.4th at 1208; Demore, 538 U.S. at 530-31 (finding significant that alien's detention had been prolonged due to his own requests for continuances). Here, there is no indication that the length of detention is due to Petitioner's actions.

In sum, Petitioner's detention of approximately 14 months is longer than the 6-month presumptively reasonable period. Given the fact that no neutral arbiter has determined in that time whether Petitioner presents a risk of danger to the public or a flight risk, the first factor weighs in favor of Petitioner.

As to the second factor, "the risk of an erroneous deprivation of [Petitioner's] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards," Mathews, 424 U.S. at 335, the Court finds this factor also weighs in favor of Petitioner. The "risk of an erroneous deprivation of [a petitioner's] interest is high" where "[h]e has not received any bond or custody redetermination hearing[.]" Jimenez, 2020 WL 510347, at *3. Thus, the probable value of

additional procedural safeguards, i.e., a bond hearing, is high, because Respondents have provided virtually no procedural safeguards at all. Given that Petitioner has been held without a bond hearing for well over a year, and it is not clear when detention will end, the risk of erroneous deprivation weighs in favor of granting a bond hearing.

In the third factor, the Court weighs the government's interest, "including the function involved and the fiscal and administrative burdens that the additional or substitute requirement would entail." Mathews, 424 U.S. at 335. As previously discussed, the government has a strong interest in effecting removal, Demore, 538 U.S. at 531, and in protecting the public from danger, Prieto-Clark, 534 F.3d at 1062-65.  As other courts have recognized, however, the key government interest at stake here "is not the continued detention of Petitioner, but the government's ability to detain him without a bond hearing." Zagal-Alcaraz v. ICE Field Office Director, 2020 WL 1862254, at *7 (D. Or. 2020) (collecting cases).  Here, the government's asserted interest is hinged on mere speculation about Petitioner's risk of flight or dangerousness. Petitioner seeks a bond hearing, not unqualified release. Providing a bond hearing would not undercut the government's asserted interest in effecting removal. Indeed, the purpose of a bond hearing is to inquire whether the alien represents a flight risk or danger to the community. See In re Guerra, 24 I.&N. Dec. 37 (B.I.A. 2006).  Given "the minimal cost of conducting a bond hearing, and the ability of the IJ to adjudicate the ultimate legal issue as to whether Petitioner's continued detention is justified," courts have concluded that "the government's interest is not as weighty as Petitioner's." Zagal-Alcaraz, 2020 WL 1862254, *7 (quoting Lopez Reyes v. Bonnar, 362 F. Supp. 3d 762, 777 (N.D. Cal. 2019)). The Court agrees with this analysis. Although the Government has a strong interest, it is outweighed by Petitioner's.

In sum, the three Mathews factors weigh in Petitioner's favor and outweigh the government's interest in further detention without inquiry into whether he represents a flight risk or danger to the community.  The Court finds that Petitioner's prolonged detention violates his Fifth Amendment due process rights.

### 3.    Remedy

"The Court finds, consistent with other post-Jennings cases, that the appropriate remedy should be a bond hearing before an immigration judge[.]" Lopez v. Garland, 631 F. Supp. 3d 870, 882 (E.D.

Cal. 2022). See Martinez Leiva v. Becerra, No. 23-cv-02027-CRB, 2023 WL 3688097, at *9 (N.D. Cal. May 26, 2023) ("The Court further concludes that the appropriate remedy here is a bond hearing, and that an IJ, not the Court, should conduct it[.]" (footnote omitted)); Mansoor v. Figueroa, No. 3:17-cv-01695-GPC (NLS), 2018 WL 840253, at *4 (S.D. Cal. Feb. 13, 2018) ("The Court finds the IJ is uniquely qualified and situated to make neutral administrative determinations about Petitioner's eligibility for release on bond and/or placement in a supervised release program such as ISAP.").

The Court now turns to the burden of proof at the bond hearing and which party should bear such burden. The Court finds that the government should bear the burden of justifying Petitioner's continued confinement under § 1225(b) by clear and convincing evidence that Petitioner is a flight risk or a danger to the community. See A.E. v. Andrews, No. 1:25-cv-00107-KES-SKO (HC), 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025) (recommending that "Respondent be ordered to provide Petitioner with a bond hearing before an immigration judge at which Respondent must justify Petitioner's continued detention by clear and convincing evidence" in § 1225(b) context); Sanchez-Rivera v. Matuszewski, No. 22-cv-1357-MMA (JLB), 2023 WL 139801, at *7 n.5 (S.D. Cal. Jan. 9, 2023) (following "an overwhelming majority of courts that have held that the government must justify the continued confinement of a non-citizen detainee under § 1226(c) by clear and convincing evidence that the non-citizen is a flight risk or a danger to the community"). In the event Petitioner is determined not to be a danger to the community and not to be so great a flight risk as to require detention without bond, the IJ should consider Petitioner's financial circumstances or alternative conditions of release. See Hernandez v. Sessions, 872 F.3d 976, 1000 (9th Cir. 2017) ("Plaintiffs are likely to succeed on their challenge under the Due Process Clause to the government's policy of allowing ICE and IJs to set immigration bond amounts without considering the detainees' financial circumstances or alternative conditions of release."); Black v. Decker, 103 F.4th 133, 138 (2d Cir. 2024) (The district court "correctly directed the immigration judge ("IJ"), in setting his bond and establishing appropriate terms for his potential release, to consider his ability to pay and alternative means of assuring appearance.").

### III.    RECOMMENDATION

For the foregoing reasons, IT IS HEREBY RECOMMENDED that the petition be GRANTED and Respondent be DIRECTED to provide Petitioner with a bond hearing before an Immigration Judge.

This Findings and Recommendation is submitted to the United States District Court Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within ten (10) days after being served with a copy of this Findings and Recommendation, a party may file written objections with the Court and serve a copy on all parties. Id. The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendation" and shall not exceed fifteen (15) pages, except by leave of court with good cause shown. The Court will not consider exhibits attached to the Objections. To the extent a party wishes to refer to any exhibit(s), the party should reference the exhibit in the record by its CM/ECF document and page number, when possible, or otherwise reference the exhibit with specificity. Any pages filed in excess of the fifteen (15) page limitation may be disregarded by the District Judge when reviewing these Findings and Recommendations pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014).  This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the District Court's judgment.

IT IS SO ORDERED.

Dated:    **March 23, 2026**                        /s/ *Sheila K. Oberto*
                                                      UNITED STATES MAGISTRATE JUDGE